UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-cv-61704-XXXX

JURY TRIAL DEMANDED

NADEJDA JASTRJEMBSKAIA and
AURORA CRUISES AND TRAVEL, LLC,

    Plaintiffs,

v.

INCRUISES, LLC and INGROUP
INTERNATIONAL, LLC f/k/a and d/b/a
INCRUISES INTERNATIONAL, LLC,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, NADEJDA JASTRJEMBSKAI and AURORA CRUISES AND TRAVEL, LLC (collectively "Plaintiffs"), by and through the undersigned counsel, file this action for damages and injunctive relief against INCRUISES, LLC and INGROUP INTERNATIONAL, LLC, f/k/a INCRUISES INTERNATIONAL, LLC (collectively "Defendants" or "inCruises").

## JURISDICTION AND VENUE

1. Jurisdiction for this cause of action lies within this Court by virtue of 28 USC § 1332(c)(1) because this is an action for damages in excess of $75,000 and the parties are diverse in citizenship.

2. Plaintiff, NADEJDA JASTRJEMBSKAIA ("Nadia"),[1] is an individual over the age of 18 and a resident of Port St. Lucie, Florida.

---

1. The Russian spelling for Nadejda Jastrjembskai is Надежда Ястржембская (Nadezhda Yastrzhembskaia). Dr. Jastrjembskai received her international passport in 1991 when Russia used the French spelling for names (Nadejda

3. Plaintiff, AURORA CRUISES AND TRAVEL, LLC ("Aurora") is a Florida Limited Liability Company headquartered in Port St. Lucie, Florida.

4. INCRUISES, LLC ("inCruises LLC") is a foreign limited liability company incorporated, organized, and formed in Delaware and has its headquarters and principal place of business in Puerto Rico.

5. INGROUP INTERNATIONAL, LLC d/b/a and f/k/a INCRUISES INTERNATIONAL, LLC ("inCruises International") is a foreign limited liability company incorporated, organized, and formed in Puerto Rico and has its headquarters and principal place of business in Puerto Rico.

6. inCruises International rebranded in 2018 and registered under its new corporate name, inGroup International, LLC, in San Juan, Puerto Rico on September 6, 2018, Register No. 415291.

7. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(c) because Defendants are registered with the Florida Division of Corporations to do business in Florida as foreign limited liability companies and have registered agents for service of process in Pembroke Pines and Plantation, Broward County, Florida.

---

Jastrjembskaia). Dr. Jastrjembskai built her professional reputation using the French translation of her name. She thus continued using the French translation even after Russia started translating her name to English. (See Exhibit "A.") See also https://www.akm.ru/eng/press/the-central-bank-of-the-russian-federation-officially-recognized-incruises-as-a-pyramid-scheme/ (spelling Nadia's name, Nadezhda Yastrzhembskaya).

## THE PARTIES

**I.      Nadia and Aurora**

8.      Nadia is the owner and managing director of Aurora, a travel agency specializing in high-end worldwide cruises.

9.      Nadia has spent decades working and developing a strong reputation as a travel industry expert.

10.     Nadia is certified by Cruise Line International Association (CLIA) as an Elite Cruise Counselor – CLIA's highest rank.

11.     Nadia authored and published a book about cruises and regularly blogs about cruises.

12.     Among Plaintiffs' clientele are the Russian-based cruise population and the Russian diaspora cruise population.

13.     Prior to 2020, Nadia's reputation as an insightful and trustworthy cruise expert was celebrated by globetrotters worldwide.

14.     As an Elite travel counselor, philanthropist, and author, Nadia relies heavily on her reputation as a source of income.

**II.     inCruises**

15.     inCruises is a travel club that sells memberships for cruise trips with Seller of Travel registrations in California, Florida, and Washington under each state's Seller of Travel regulations.

16.     inCruises solicits its "Members" to serve as "Partners" as its Sales Force to sell its travel club memberships and to recruit additional Members to become Partners and sell inCruise's travel club memberships.

17. According to its "Independent Partner Agreement," inCruises Partners are "independent contractors" and not employees of inCruises.

18. In 2021, the Central Bank of the Russian Federation officially recognized InCruises as a "pyramid scheme" and included inCruises in its "List of companies with identified signs of illegal activity in the financial market."[2]

## GENERAL ALLEGATIONS

19. On or about September 10, 2020, inCruises held a meeting with its some of its Partners and its executives, including CEO Michael Hutchinson. At the meeting, inCruises and the Partners in attendance agreed and conspired to publish false, misleading, or defamatory information about Nadia to other Partners and on social media sites as a part of a campaign to harm Nadia's reputation and Plaintiffs' business.

20. inCruises and its conspiring Partners translated over 600 such statements into Russian and published them to Partners who then posted the statements on social media sites. See Exhibit A.

21. Among the 600 statements that inCruises and/or its co-conspirators agreed to publish was a false claim that Nadia lied during an interview with a blogger about the nature of inCruises business by referring to inCruises as a "pyramid scheme."

22. inCruises and/or its co-conspirators also falsely published a false report that inCruises sued Nadia for defamation and recovered a judgment against Nadia.[3]

---

2. ATOR Bulletin Nov. 18, 2021 The Central Bank of the Russian Federation officially recognized Incruises as a pyramid scheme (last visited Sept. 9, 2022).

3. See e.g., Press Release dated Nov. 19, 2021 inCruises International clarifies statement made by the Central Bank of Russia (last visited Sept. 9, 2022).

23. inCruises' campaign of denigration against Nadia was designed to destroy her business in the travel industry and to discredit her reputation as a travel expert by falsely portraying her as dishonest, incompetent, unreliable, and/or mentally and emotionally unstable.

24. inCruises and its conspiring Partners published the statements about Nadia throughout the Russian cruise community and among the Russian diaspora in general.

25. Plaintiffs received letters and questions by existing customers and referring agents about the statements.

26. The publication of inCruises' and its conspiring Partners' social media posts caused Plaintiffs to lose business, revenue and clients and damaged the confidence of Plaintiffs' customers and referring agents, many of whom no longer do business with Plaintiffs because of the conduct of inCruises and/or its conspiring Partners.

27. inCruises and/or its conspiring Partners published false information about Nadia for the purpose of damaging her reputation and harming her business.

28. The publication of the social media posts on Facebook and Instagram allowed the post to be easily forwarded and shared, thereby increasing the scope of the viewers of the statements and the magnitude of the harm and damages incurred by Plaintiffs.

29. Defendants' intentional and wrongful conduct actually and proximately caused damages to Plaintiffs, including but not limited to financial harm to Plaintiffs' business, damage to Nadia's personal and professional reputation, caused Nadia to suffer extreme emotional stress, mental anguish, embarrassment, and humiliation and exposed Plaintiffs to distrust, hatred, contempt, and ridicule, and impaired Nadia's ability

to work the cruise community and her charitable work with the Ukrainian refugee population.

30. The misconduct of Defendants and/or their employees, agents and/or co-conspirators was intentional or grossly negligent in that: (1) they had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage; or (2) Defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

31. Defendants actively and knowingly participated in the conduct of their and/or their employees, agents and/or co-conspirators; Defendants' officers, directors, or managers knowingly condoned, ratified, or consented to such conduct; or Defendants engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by Plaintiffs.

32. Plaintiffs have retained the law firm Hunker Appeals and have agreed to pay their attorneys a reasonable fee for their services in this action.

## COUNT I - DEFAMATION

33. Plaintiffs re-allege paragraphs 1 through 30 of this Complaint as if set forth fully herein.

34. Defendants and/or their co-conspirators knowingly, intentionally, willfully, or maliciously published statements about the Plaintiffs that Defendants knew to be false or otherwise published such statements with reckless disregard for their truth or falsity.

6

35.     The false statements constitute defamation per se or general defamation as they substantially and falsely accuse the Plaintiffs of fraud, scams, or dishonesty, or combination of the foregoing.

36.     The false statements were not privileged, and Defendants and/or their co-conspirators made the false statements to the public by posting the statements on Facebook and the Internet and knew that Defendants' public statements about Plaintiffs would cause severe damage to the reputation, business opportunities, social relationships, and Nadia's career.

37.     Defendants and/or their co-conspirators have made, and continue to make, these and similar false and defamatory statements regarding Plaintiff to third parties in an effort to harass, embarrass, and impugn Plaintiff and impact Plaintiffs life and well-being.

38.     Defendants' and/or their co-conspirators' defamatory statements have been, and are continuing to be, widely disseminated in blogs, podcasts, and otherwise published and posted on various websites on the Internet, causing Plaintiffs not only past and current harm, but perpetual harm.

39.     At the time of said publications, Defendants and/or their co-conspirators defamed Plaintiffs for their own personal gain and did so in bad faith and with ill will and malice.

40.     Alternatively, the defamatory statements constitute defamation by implication.

41.      Defendants and/or their co-conspirators, with no legal privilege to do so, maliciously, recklessly, in bad faith and in wanton disregard for the truth or falsity of the

implications juxtaposed a series of facts and/or omitted facts so as to imply a defamatory connection between them.

42. The statements falsely implied that the Plaintiffs engaged in scamming or acted with dishonesty and that Nadia was unstable and corrupt in her business cruise ship business practices.

## COUNT II - UNFAIR TRADE PRACTICES

43. Plaintiffs re-allege paragraphs 1 through 30 of this Complaint as if set forth fully herein.

44. Defendants violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) by engaging its Partners as part of a pyramid scheme to wage a social media campaign of publishing false and misleading information about Plaintiffs to harm Plaintiffs' business and eliminate Plaintiffs as a competitor and a critic.

45. Defendants' conduct in the travel industry was in the course of trade or commerce as defined in FDUTPA.

46. Defendants' conduct was a deceptive and unfair trade practice under the FDUTPA because it was designed to mislead the public, the cruise community, and Plaintiffs' clients and business associates into believing false and negative statements about Plaintiffs' business and Nadia's character.

47. Plaintiffs suffered actual injury due to Defendant's violation of in the Florida Deceptive and Unfair Trade Practices Act.

48. Plaintiffs are entitled to recover reasonable attorney's fees in this action because FDUTPA provides for recovery of attorney's fees upon entry of a favorable final judgment.

## COUNT III – CIVIL CONSPIRACY

49. Plaintiffs re-allege paragraphs 1 through 30 of this Complaint as if set forth fully herein.

50. Defendants and their Partners conspired and agreed among themselves to wage a campaign of false or misleading social media posts and other publications to destroy Plaintiffs' business and Nadia's reputation.

51. Pursuant to the conspiracy agreement and in furtherance of the conspiracy, Defendants and/or their Partners published over 600 false or misleading social media posts and other publications about Nadia to the public, the cruise community, and among the Russian diaspora including to Plaintiffs' clients and business associates.

52. Defendants and their conspiring Partners: (1) committed the tort of defamation; (2) engaged in deceptive or unfair trade practices; and/or (3) by force of numbers possessed a power of coercion by virtue of having acted in combination that an individual acting alone would not possess amounting to an actionable wrong and an independent tort.

## PRAYER FOR RELIEF

Plaintiff seeks a judgment against the Defendants as follows:

   a. For compensatory and punitive damages in an amount to be proved at time of trial;

   b. For injunctive relief requiring Defendants to: (1) remove the statements about Plaintiffs, (2) issue retractions acknowledging and correcting their statements about Plaintiffs, and (3) prohibiting Defendants from continuing to engage in such conduct against the Plaintiffs;

   c. For recovery of attorneys' fees and costs; and

   d. For such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: September 10, 2022.

Respectfully Submitted,

/s/ Thomas L. Hunker
Thomas L. Hunker, Esq.
Florida Bar No. 38325
Virginia A. Paxton, Esq.
Florida Bar No. 1003907
HUNKER APPEALS
110 SE 6th St., Suite 2330
Fort Lauderdale, FL 33301
Phone: (877) 841-8808
Fax: (954) 477-7313
thomas.hunker@hunkerappeals.com
ashley.paxton@hunkerappeals.com
kristopher.cameron@hunkerappeals.com
cyndy.wald@hunkerappeals.com
carly.dawson@hunkerappeals.com
**Counsel for Plaintiff**